598 A.2d 1011

**COMMONWEALTH of Pennsylvania**

v.

**Haddrick BYRD, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 17, 1991.

Filed Oct. 30, 1991.

612

Joseph J. Hylan, Asst. Public Defender, Norristown, for appellant.

J. Allen Daringer, Asst. Dist. Atty., Royersford, for Com., appellee.

Before JOHNSON, FORD ELLIOTT and HESTER, JJ.

JOHNSON, Judge.

In February, 1990, a jury convicted Haddrick Byrd of kidnapping, assault, recklessly endangering another person, and possessing instruments of crime. Following denial of post-verdict motions, the Honorable Lawrence A. Brown sentenced Byrd to aggregate terms of five and one-half to eleven years' imprisonment, to be served concurrently with a pre-existing, unrelated life sentence.

Byrd, while an inmate at Graterford State Correctional Institution, took Irwin M. Schmuckler, principal of the Graterford School, as hostage, holding him for seven and one-half hours before releasing him unharmed. This prompted the filing of the charges underlying the judgments of sentence here on review.

On appeal, Byrd alleges error by the trial court in (a) refusing Byrd's request to play a videotape of the entire hostage situation to the jury; (b) denying a mistrial motion based upon alleged prosecutorial misconduct during the closing argument to the jury; and (c) submitting written definitions of the crimes charged to the jury, for their deliberation.

We find the first two issues to be without merit. However, inasmuch as the submission of written instructions to the jury is not consistent with our Supreme Court's mandate in *Commonwealth v. Oleynik*, 524 Pa. 41, 568 A.2d 1238 (1990), we are constrained to reverse judgment of sentence and remand for a new trial.

■ The most distinguished trial court, Judge Brown, declined to rule upon Byrd's third issue, regarding the submission of written instructions to the jury, on the basis that the issue had been waived. Judge Brown correctly points out that, normally, a party must specifically object to a charge when given at trial in order to preserve any claim of error for appellate review. Pa.R.A.P. 302(b), *Rogers v.*

*Johnson & Johnson Products, Inc.,* 401 Pa.Super. 430, 585 A.2d 1004 (1990).

On the unique facts of this case, we believe the interest of justice compels the consideration of this claim. On February 26, 1990, the trial commenced before Judge Brown, with Byrd proceeding *pro se.* The Montgomery County Public Defender's Office was directed by the trial judge to assist Byrd in his defense. The trial lasted two days. Byrd did not make an opening statement, did not testify, and did not make a closing argument.

During the charge of the court, Judge Brown made the following statements, inter alia:

I might say to you that when defendants are charged with multiple crimes requiring definitions, it's my practice to give you written explanations so that you don't have to recall to mind everything I've told you. And I will do that shortly after your—shortly after you begin to deliberate.

. . . . .

Now, as I told you a few moments ago, I'm going to give you copies of the definitions of these crimes and, in addition, the definition in the Code of serious bodily injury which, of course, will be much more lengthy than appears here, and it will be in substantially the same as the ones I've just instructed you on. These references in the charge of unlawful restraint, for example, exposing a person to risk of serious bodily injury, are simply a means of telling you precisely which crime I'm referring to. That, I think, will be perfectly clear and you will be able to tie that into these definitions which I'm going to give you in writing.

Notes of Testimony, February 26–27, 1990, pages 145, 151a. The jury retired to commence its deliberations at 2:15 p.m. *Id.* at page 153. At 3:58 p.m., proceedings were reconvened with the Court, the trial assistant district attorney, Karen A. Coletta, and the stand-by assistant public defender, Joseph Hylan, being present. At that time, the following ensued:

THE COURT: Let the record show that I have a question from the forelady of the jury which reads as follows: Is the definition of "knowingly" in 1488.3–89 and "consciously" in 1488.1–89 the same? We are having difficulty with the term "consciously." If they are not considered the same, could we have a definition of "consciously"? The last name is Anastasi. What's the first?

MS. COLETTA: Anne.

THE COURT: Anne Anastasi. And it's finished off with a question mark.

And I have consulted with counsel, Mr. Hylan has consulted with his client—agent, whatever—

MR. HYLAN: Principal.

THE COURT: Principal.

MR. HYLAN: My principal.

THE COURT: Principal, and all approve my sending out Page 177 which contains a definition of the word conscious in Webster's Seventh New Collegiate Dictionary. Okay, with that, we can take it from there. All right.

----

*Id.* at pages 154–55. Attached to the original Transcript of Notes of Testimony, February 26 and 27, 1990, filed April 20, 1990, are the original handwritten question from Anne Anastasi, set forth above, and the xerox copy of page 177 of the Webster's Dictionary upon which page the definition of the word, "conscious", is included.

*Commonwealth v. Oleynik, supra,* had been decided on January 31, 1990, approximately one month before Byrd's trial before Judge Brown. Deputy Public Defender Hylan points out in the Brief for Appellant, at page 15, that the *Oleynik* decision was published in the March 9, 1990 advance sheets, after the filing of Byrd's post-verdict motions on February 28, 1990. Hylan promptly wrote to the trial court, on March 26, 1990, bringing the *Oleynik* decision to the court's attention "in further support of Mr. Byrd's request for a new trial." This was well before the trial court, on April 19, 1990 set argument on the motion for new

trial to be held on May 17, 1990. Order, Brown, J., filed April 23, 1990.

Since the *Oleynik* decision was filed on January 31, 1990, and would have been available in slip opinion form immediately thereafter, we cannot say that this is a case where counsel would not have been expected to anticipate changes in the law. On the contrary, the *Oleynik* decision, holding "that the possible prejudice to a defendant from written instructions to a jury outweighs any benefit such instructions might provide," *Oleynik*, 524 Pa. at 46, 568 A.2d at 1241, was clearly the law when the *Byrd* trial occurred.

Where our Supreme Court has declared that the prejudice from written instructions outweighs any benefit such instructions might provide, we must conclude that Deputy Public Defender Hylan correctly brought this issue to the attention of the trial court through his post-verdict communication. Further, we believe the trial judge, pursuant to Pa.R.Crim.P. 1123(a) should have considered this ground, "upon cause shown."

■ There is no dispute that the trial court did, in fact, utilize written instructions not only in his basic charge to the jury but also in response to an inquiry from the jury concerning the meaning of the words "knowingly" and "consciously". The only response to this by the Commonwealth and by the Court, on this appeal, is that the issue is waived. Since we do not agree that this issue was waived, on the unique facts in this case, we are constrained to find merit in Byrd's contention. Moreover, were this specific issue on these precise facts to return to this court within a framework of ineffective assistance of counsel, the fact that the claim has merit and that the defendant has been prejudiced has already been decided by our Supreme Court in *Oleynik*. In the interest of judicial economy, therefore, and finding the claim to have merit, we reverse judgment of sentence and remand for a new trial. *Oleynik*, 524 Pa. at 46–47, 568 A.2d at 1241.

We treat the first and second issues, (a) and (b), above, since this matter must be returned for retrial. Also, in light of our status as an intermediate appellate court, we cannot predict the future course of this litigation, which may include further appellate review. Consideration of these two issues is, accordingly, in order. *Commonwealth v. Tippens,* 409 Pa.Super. 536, 598 A.2d 553 (1991).

As his first issue, Byrd contends that a videotape of the hostage situation which had been made by corrections officers, and which ran approximately seven and one-half hours in length, should have been shown to the jury. We disagree. During an *in camera* conference on this issue, mid-trial, the distinguished trial judge entertained the Commonwealth's motion to show a thirty-five minute condensation of the videotape, Exhibit 6, as well as Byrd's following motion to show the entire videotape. Notes of Testimony, February 26 and 27, 1990, pages 94–106.

■ We start our analysis with the general principles set forth in *Commonwealth v. Conway,* 368 Pa.Super. 488, 534 A.2d 541 (1987). There, in reviewing the suppression of the audio portion of a videotape of a driver performing sobriety tests, we set forth the general principles relating to the admission of evidence. A trial court has broad discretion as to the manner in which a trial is to be conducted, particularly with regard to the admission or exclusion of evidence. *Id.* Not all relevant evidence is admissible, and a trial court may exercise its discretion to exclude relevant evidence that may confuse, mislead or prejudice the jury. *Id.*

Moreover, where materials have been adequately covered in previous testimony, and the introduction of further evidence on the same point would serve only to distract the jury from the relevant issues, denial of cumulative evidence is proper. *Commonwealth v. Henry,* 524 Pa. 135, 569 A.2d 929, 936 (1990), *cert. denied* — U.S. ——, 111 S.Ct. 1338, 113 L.Ed.2d 269 (1991).

During the *in camera* conference to determine whether the videotape, or any portion of it, would be admitted, the

trial assistant district attorney admitted that there was nothing that the jury would learn from the tape that they did not already know from the Commonwealth's evidence already introduced. Notes of Testimony, February 26–27, 1990, page 95. The defendant, Byrd, sought juror viewing of the tapes—according to the record—to introduce testimony of one Mr. Gaines, a crisis team member and prison counselor. Gaines was being offered to testify to what he perceived to be unfair procedures in connection with Byrd's earlier murder trial. *Id.* at pages 97–100. At the time of trial, Byrd argued to the court that the evidence was necessary to prove duress. The trial court properly ruled that Byrd's perception of prior unfair behavior by those who prosecuted him for murder would not constitute duress as a defense on the kidnapping and related charges, since there was no suggestion of the use of, or threat to use, unlawful force against Byrd amounting to legal coercion. 18 Pa.C.S. § 309(a).

■ Thus, the use to which Byrd wished to put the videotape was irrelevant to the charges then before the court, and the request to introduce the entire seven and one-half hours of videotape was properly denied. On appeal, Byrd has converted his argument to a present contention that "if the jury were to view the video tape, it *might* have concluded that the defendant, as a matter of fact and as a matter of law, lacked the requisite criminal intent." Brief for Appellant, Argument, page 6. Since this argument was not raised at trial, and even is at variance to the grounds set forth in the Motion for New Trial ("video tape was relevant, material and the 'best evidence' of the incident"), we conclude that this issue as presented has been waived. Pa.R.Crim.P. 1123(a). Pa.R.A.P. 302(a). Finally, with regard to this issue, we find the analysis set forth by Judge Brown in his Opinion filed March 27, 1991, pursuant to Pa.R.A.P. 1925 to be correct and complete, and is adopted by this court for purposes of further review.

■ As to the second issue, Byrd argues that the use of the word "uncontroverted" by the assistant district attor-

ney during her closing argument constituted an impermissible comment on Byrd's decision to present neither evidence nor argument. Near the close of Coletta's relatively brief closing argument, she said:

> Lastly, the defendant is charged with possession of an instrument of crime. Ladies and gentlemen, you heard from Sergeant Sobolewski uncontroverted testimony, ladies and gentlemen, that this came from the defendant's hands on February 28, 1989. C–1 is an instrument with intent to employ criminally. Don't get caught up, ladies and gentlemen, thinking that there should be something else. We submit to you that we have proven through clear, convincing and credible witnesses and evidence that on February 28, 1989 this defendant held Mr. Schmuckler a hostage.

Notes of Testimony, February 26–27, 1990, page 136. Immediately thereafter, Hylan, the standby assistant public defender, brought to the court's attention that Byrd desired to make a motion. Byrd moved for a mistrial, claiming that Coletta's reference to "uncontroverted testimony", improperly reflected on his constitutional right not to testify.

In support of his contention, Byrd strongly relies upon *Commonwealth v. Davis*, 452 Pa. 171, 305 A.2d 715 (1973). He argues that *Davis* "presents a factual situation remarkably similar to the case at bar, even with regard to the words uttered by the prosecutor." Brief for Appellant, Argument, page 12. We cannot agree. In *Davis*, our Supreme Court was called upon to review the impact of persistent references, over objection, to the evidence being "uncontroverted." Justice Roberts, throughout the opinion, characterizes the remarks as "repeated use of the words," and "persistent references." In evaluating whether the prosecutor's comments could be saved on a harmless error analysis, Justice Roberts stated:

> The prosecutor also repeatedly used the terms "uncontroverted" or "uncontroverted facts" at least three other times in reference to portions of the Commonwealth's evidence. This argument was obviously calculated to

move the jury towards conviction; "Indeed, the very persistence of the government in making these remarks is proof that it attached much importance to them." We must conclude that there is a reasonable possibility that the prosecutor's unconstitutional argument "might have contributed to the conviction."

*Davis*, 452 Pa. at 179–180, 305 A.2d at 720, (citations omitted). A complete reading of *Davis* leads to the conclusion that, there, the Supreme Court was reviewing an egregious circumstance of repeated, improper references to matters being "uncontroverted."

More recently, our Supreme Court has had occasion to review the prosecutor's reference to testimony being "uncontradicted" and has found no constitutional violation. *Commonwealth v. Duffey*, 519 Pa. 348, 372, 548 A.2d 1178, 1184 (1988). In that case, the prosecutor had, during closing remarks, referred to certain testimony regarding the condition of an alleged rape victim's clothing and stated that the evidence on the point was "uncontradicted." In refusing to find reversible error, our Supreme Court said, in pertinent part:

We recognize that a prosecutor is not permitted to comment adversely upon a defendant's refusal to testify on the merits of the charge against him. Such comment by the prosecution violates the constitutionally based proscriptions against adverse comment on the refusal of the accused to take the stand. However, we are also mindful that a prosecutor's remarks fall within the ambit of fair comment if they are supported by evidence and they contain inferences which are reasonably derived from that evidence. Our review of the record indicates that the prosecutor's remarks did not refer to appellant's refusal to take the stand in his defense; the prosecutor's statement was supported by the evidence; and it did not require appellant to rebut it.

*Duffey*, 519 Pa. at 361, 548 A.2d at 1184, (citations omitted). *Compare Commonwealth v. Crawley*, 514 Pa. 539, 558, 526 A.2d 334, 344 (1987).

The trial court correctly observed, in this case, that any possible prejudicial impact stemming from the prosecutor's closing remarks must be evaluated in the context in which they occurred. *Commonwealth v. D'Amato*, 514 Pa. 471, 489, 526 A.2d 300, 309 (1987). The phrase "uncontroverted testimony" does not automatically trigger a mistrial, but must be shown to have referred to the accused's refusal to take the stand. Whether the standard has been violated by the language of the prosecutor is not in the first instance the decision for the reviewing court, but is the duty of the trial judge; we are limited in our review to whether the trial court abused its discretion in refusing to grant a mistrial. *Commonwealth v. Simon*, 432 Pa. 386, 394, 248 A.2d 289, 292 (1968) cited in *Commonwealth v. D'Amato*, 514 Pa. at 491, 526 A.2d at 310.

■ Comments by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict. *Commonwealth v. D'Amato*, 514 Pa. at 490, 526 A.2d at 309. In our review of the record before us, we cannot conclude that the prosecutor's single reference to the "uncontroverted testimony" during her analysis of the evidence on the charge of possessing an instrument of crime could be reasonably understood to refer to Byrd's refusal to take the stand in his defense. Her statement was, in fact, supported by the evidence. *Commonwealth v. Barren*, 501 Pa. 493, 462 A.2d 233 (1983).

■ While references to "uncontroverted evidence" and "uncontradicted testimony" might better be kept out of the closing remarks of the prosecutor in those cases where the accused has elected not to testify, we cannot say that Judge Brown abused his discretion in denying the motion for mistrial in this case, based upon the complete record before us.

Although we find no merit in the contentions relating to the exclusion of the videotape from juror view and the isolated reference to "uncontroverted testimony" during the prosecutor's closing remarks, we must nevertheless reverse the judgment of sentence and remand for a new trial, based upon the improper use of written instructions during the charge to the jury.

Judgment of sentence reversed. Case remanded for new trial. Jurisdiction relinquished.