**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Jackie YOUNG, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 20, 2000.

Filed Jan. 25, 2001.

M. Susan Ruffner, Public Defender, Renee Pietropaolo, Pittsburgh, for appellant.

Sandra Preuhs, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before McEWEN, P.J., EAKIN and BROSKY, JJ.

BROSKY, J.

¶ 1 Appellant Jackie Young appeals from the judgment of sentence entered on May 6, 1999. Appellant was convicted after a jury trial of aggravated assault, 18 Pa. C.S.A. § 2702(a)(1); firearms not to be carried without a license, a violation of the Uniform Firearms Act, 18 Pa.C.S.A. § 6106; and recklessly endangering another person, 18 Pa.C.S.A. § 2705. The charges upon which Appellant was convicted stemmed from the shooting of Mr. Tracey Bronaugh at 10:50 p.m. on March 24, 1997, in Coraopolis. Mr. Bronaugh was treated at a local hospital for a shattered bone in his leg. After he was arrested and held in a holding cell, Appellant confessed to the shooting in a written statement. He asserted at trial, however, that the confession was involuntarily made.

¶ 2 Following the convictions, Appellant was sentenced to serve five to ten years' incarceration, the mandatory minimum sentence for the aggravated assault conviction. No further sentence was imposed for the remaining convictions. Appellant, *pro se,* filed a petition under the Post-Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. §§ 9541–9546. After counsel was appointed to represent Appellant, an amended PCRA petition was filed.

¶ 3 The trial court reinstated Appellant's appeal rights *nunc pro tunc* by an order dated May 22, 2000. A notice of appeal followed, as did a Concise Statement of the Matters Complained of on Appeal. Appellant raises four issues in his appellate brief. The first issue concerns the propriety of allowing the written confession to go out with the jury during its deliberations. The second issue raises the Commonwealth's violation of due process guarantees by failing to disclose the probationary status of the Commonwealth's key witness, Michelle Phelps. The third issue concerns the trial court's failure to warn the jury that Ms. Phelps' testimony should be received with caution. The fourth issue raises the propriety of the trial court's instruction to the jury regarding aggravated assault.

¶ 4 Appellant contends, however, that if his first argument is successful, there is no need for us to address the remaining issues. Upon our thorough review of the record, we find that the trial court committed reversible error in allowing the exhibit containing Appellant's written confession to go out with the jury. For the reasons that follow, we therefore vacate the judgment of sentence and remand for a new trial in accordance with this Opinion.

¶ 5 Citing Pa.R.Crim.P. 1114, Appellant asserts that the trial judge committed reversible error in allowing his written confession, Commonwealth Exhibit 3, to go out with the jury during deliberations. He also asserts that his trial counsel was ineffective for failing to object to the violation of the rule. To prove ineffective assistance of counsel, Appellant is required to show: there is merit to his underlying claims; counsel had no reasonable basis for his course of conduct; and a reasonable probability that, but for the act or omission in question, the outcome of the proceeding would have been different. *Commonwealth v. Jones,* 546 Pa. 161, 683 A.2d 1181, 1188 (1996).

¶ 6 At the time of the trial, Rule 1114 provided in relevant part:

2. During deliberations, the jury shall not be permitted to have a transcript of any trial testimony, nor a copy of any written or otherwise recorded confession by the defendant, nor a copy of the information.

Pa.R.Crim.P. 1114. The trial judge, who admittedly allowed the jury to have possession of Appellant's written confession during deliberations, agrees that he com-

mitted reversible error and asks that we award a new trial. The Commonwealth, however, takes the position that the law is unsettled as to whether a reversible error was committed or whether we should conduct a harmless error analysis.

¶ 7 The trial in this matter was held on February 8 and 9, 1999. Officer Thomas Ficarri read Commonwealth Exhibit 3 into the record, stating:

> I, Jackie Young, swear that two people approached me and tried to sell me drugs. When I pulled my money, he swung at me and grabbed it. Then him and the girl walked away. Then I pulled the gun out of my back pocket and told him to stop. That's when he took off and tried to run, and I shot him.
>
> Then I ran into Mickey's house, to her bedroom, ripped the bottom off the boxspring, and threw the gun in. Then she hid me in the basement.
>
> After the first time the police left, came out and smoked some crack with Mickey. When I came back the second time, she sorry. It says, when came back the second time, she rushed me into the basement again.
>
> That's the end of the statement. That was signed by Mr. Young.

N.T., 2/8–9/99, at 104. Appellant asserted at trial that the statement was involuntarily made. The trial judge instructed, with no defense objection, that the Commonwealth's exhibits which included the written confession, but not the gun, were to go out with the jury in its deliberations. N.T., 2/8–9/99, at 231.

¶ 8 As both parties acknowledge, the only Supreme Court case involving the propriety of the trial court's allowing a written confession to go out with the jury is *Commonwealth v. Terry*, 501 Pa. 626, 462 A.2d 676 (1983). In *Terry*, the defendant had made a confession shortly after his arrest that was reduced to writing in the words of a State Police Trooper. At that time, Rule 1114 provided:

> Upon retiring for deliberations, the jury shall not be permitted to have a transcript of any trial testimony, nor a copy of any written confession by the defendant, nor a copy of the information or indictment. Otherwise, upon retiring, the jury may take with it such exhibits as the trial judge deems proper.

*Terry*, 462 A.2d at 677.

¶ 9 The Supreme Court, rejecting the Commonwealth's contention that the Rule 1114 violation was harmless error, found that the availability of police editing of the confession was prejudicial to the defendant and reversed and remanded for a new trial.

¶ 10 Justice Zappala stated in his concurring opinion that the Court should focus on whether a violation of Rule 1114 had occurred. He stressed that the rule represents a policy determination that the items specifically enumerated in the rule are of such a character that their possession by a jury during its deliberations is necessarily prejudicial and, therefore, prohibited. He admonished that the majority's opinion might be construed as the creation of a precedent involving the use of a harmless error analysis.

¶ 11 In *Commonwealth v. Foster*, 425 Pa.Super. 61, 624 A.2d 144 (1993), a panel of this Court addressed whether the trial court properly permitted the jury to have and view, during deliberation, a videotape of the reenactment of the crimes with which defendant was charged. Police made the videotape. The defendant asserted that the videotape was tantamount to a written confession, such that permitting the jury to view it during deliberations was a violation of Rule 1114. At the time of the trial in *Foster*, Rule 1114 provided the same operative language as it had at the time of the trial in *Terry*.

¶ 12 The panel in *Foster* found that Rule 1114 was violated and that reversible error had occurred. The panel reasoned that the concern that a jury will accord undue emphasis on a written confession in the

deliberations applied equally to the videotape at issue. In reaching this conclusion, the panel considered the Commonwealth's contention that the error was harmless, and concluded that the argument that the defendant might not have been prejudiced was meritorious. However, the panel found that it was a matter that could not be decided on appeal because the opening and closing remarks, critical to the argument, were not part of the transcribed record. Accordingly, the panel remanded to the trial court to make a ruling on whether the defendant was, in fact, prejudiced. The panel instructed that if there was prejudice, the judgment of sentence was to be reversed and a new trial awarded.

¶ 13 Subsequently, in *Commonwealth v. Penrose,* 447 Pa.Super. 478, 669 A.2d 996 (1995), a panel of this Court addressed the question of whether the defense counsel's decision at trial not to object to a statement of the defendant being submitted to the jury was ineffective assistance. In the statement, the defendant admitted to killing his wife. At the time of the trial, Rule 1114 provided the same operative language as it had at the time of *Terry.*

¶ 14 The panel reasoned that there had been a Rule 1114 violation, but found no ineffectiveness on the part of defense counsel in failing to object to the statement going out with the jury during its deliberations. The panel concluded that counsel had a reasonable trial strategy in allowing the violation of the rule to occur without stopping it. *Penrose* was an appeal from the denial of relief under the Post–Conviction Relief Act, 42 Pa.C.S.A. §§ 9541–9546. Thus, whether to award a new trial for the underlying violation of Rule 1114 was not at issue before this panel.

¶ 15 Both parties also acknowledge the Supreme Court's decision in *Commonwealth v. Karaffa,* 551 Pa. 173, 709 A.2d

887 (1998). We find this case illuminating on the standard of review that this Court is to employ when evaluating a claim that a Rule 1114 violation has occurred, as it involved the same rule of criminal procedure that we are presently addressing. At the time of the trial in *Karaffa,* Rule 1114 permitted exhibits to be sent out with the jury at the discretion of the trial court. The rule specifically forbade giving the jury a transcript of any trial testimony, a copy of any confession by the defendant, or a copy of the information or indictment.

¶ 16 In *Karaffa,* the appellant/defendant asserted that the trial court's submitting written jury instructions on unlawful restraint and reasonable doubt constituted reversible error. The Supreme Court agreed, expressly rejecting the application of a harmless error analysis, emphasizing that the use of written jury instructions is intrinsically prejudicial, requiring a new trial.

¶ 17 The Supreme Court in *Karaffa* concluded that the third prong of the test for ineffective assistance of counsel was violated by counsel's omission, considering the inherent prejudice in allowing the trial court to submit the written instructions to the jury. Mr. Justice Castille filed a dissenting opinion joined by Madame Justice Newman, stating that he would have concluded that trial courts should have discretion to submit standard written jury instructions to juries in appropriate circumstances.[1]

¶ 18 We disagree with our colleague in the dissent in this matter, who believes that, in deciding *Terry,* the Supreme Court set down the "law of the case" that would have to have been overruled by that Court in order for a reversible error analysis to be employed. In his concurring opinion in *Terry,* Justice Zappala keenly pointed out the problem inhering in the majority's disposition of the appeal. The Supreme

---

**1.** Subsequent to the decision in *Karaffa,* Rule 1114 was amended, effective January 1, 2000, to provide that, during deliberations, the jury

shall not be permitted to have written jury instructions.

Court's decision in *Terry* was controlled by the question that was squarely before it: *i.e.*, whether it was prejudicial to the appellant for the written confession to have gone out with the jury or whether the judge's allowing the confession to go out amounted to harmless error.

¶ 19 Importantly, in finding prejudice and rejecting the assertion by the Commonwealth that there was harmless error, the Court in *Terry* found a clear violation of Rule 1114. The *Terry* Court did not, at any point, expressly enter into a discussion regarding whether such a violation of Rule 1114 is *per se* prejudicial and reversible error, or whether harmless error analysis was even the appropriate analysis to be used in the first instance. Rather, the majority refuted the Commonwealth's assertions that the judge's allowing the written confession to go out with the jury was not prejudicial and was harmless. The majority's disposition of the issue in *Terry*, thus, left open for another day the question of the appropriate analysis to be used.

¶ 20 Unlike our dissenting colleague, we believe that the Supreme Court took up the question of the appropriate analysis to be used in a Rule 1114 violation context in *Karaffa*, thus squarely addressing a matter that it had never before expressly addressed, as opposed to overruling *Terry*.

¶ 21 We see no reason to accord treatment to the subsection of Rule 1114 dealing with written confessions any different from the treatment that the Supreme Court laid out in *Karaffa* for a violation Rule 1114 regarding written jury instructions going out with the jury. Both written jury instructions and written confessions are prohibited by Rule 1114 from going out with the jury during deliberations. Both types of items should be treated in like manner, as inherently prejudicial if the rule has been violated, requiring a vacation of the judgment of sentence, regardless of whether the counsel performed otherwise effectively.

 ¶ 22 According to the Supreme Court's decision in *Karaffa*, we find no place for using a harmless error analysis for the portion of Rule 1114 specifically prohibiting a trial judge from allowing the jury to have, during deliberations, a copy of a written confession of the defendant. Moreover, considering the prejudice inherent in the jury's having a copy of the written confession in its possession during deliberations, as in *Karaffa*, we find that defense counsel was ineffective for failing to object to the Rule 1114 violation. We commend the trial judge for forthrightly recognizing that reversible error occurred and that defense counsel rendered ineffective assistance in failing to object, so that the award of a new trial is necessary.[2]

¶ 23 Accordingly, we vacate the judgment of sentence and remand for a new trial in accordance with this Opinion.

¶ 24 Judgment of sentence vacated. Appeal remanded. Jurisdiction relinquished.

¶ 25 EAKIN, J., files a Dissenting Opinion.

EAKIN, J.:

¶ 1 Although my colleagues offer a persuasive view, I am compelled to dissent. While there was certainly a violation of Rule 1114 here, not every violation of the Rules requires the reversal of an otherwise lawful conviction. *Commonwealth v. Anders*, 555 Pa. 467, 725 A.2d 170 (1999). I believe the cases, and logic, compel this violation to be reviewed under a harmless error analysis; if appellant cannot prove prejudice, reversal is not his remedy.

¶ 2 The law of this case is *Commonwealth v. Terry*, 501 Pa. 626, 462 A.2d 676 (1983). My colleagues quote from Justice Zapalla's concurrence in *Terry*, but those words are not the voice of the majority. They are written separately to suggest the majority erred in analyzing the Rule 1114 violation in terms of prejudice. That is, the majority used a harmless error analy-

2. Because of this disposition, we need not reach the remaining issues raised on appeal.

sis, finding the error not to be harmless in that case. I am compelled to treat that as the proper analysis in this case as well.

¶ 3 Although the cases since *Terry* have used a harmless error analysis, the majority suggests they are overruled by *Commonwealth v. Karaffa*, 551 Pa. 173, 709 A.2d 887 (1998). While that reversal is not explicit, it is deemed implicit because confessions (the subject in *Terry* ) and written jury instructions (the subject in *Karaffa* ) are both listed in Rule 1114. While confessions and jury instructions are linked by that inclusion, that is the only relevant similarity I can determine. A confession is a piece of evidence; jury instructions are the embodiment of the law as composed by the trial judge. That retiring with written instructions is deemed prejudicial *per se* has little connection to the potential prejudice of allowing certain evidence to go out. Without a reason to treat confessions the same as jury instructions, I cannot find *Terry* is overruled by *Karaffa*.

¶ 4 Any confession is "prejudicial" to the confessor; if it were not, it likely would be inadmissible. The prejudice at issue is the fear that sending it out unfairly emphasizes a written confession in the minds of the jury. I am not certain of the logic of this presumption,[3] but that is the rule. However, emphasis and overemphasis are matters of degree, determined by many factors unique to the individual trial. If the evidence includes fingerprints, DNA, surveillance photos, six eyewitnesses, and the proverbial smoking gun, can a confession be emphasized to the point of prejudice merely by allowing it to accompany the other evidence to the jury room? Where the violation may be a scratch, would we automatically amputate the limb?

¶ 5 There are equally wide variances in what may be called a "confession." Is every written statement by an accused a confession? One statement may be entirely inculpatory; another might admit part of the criminal act but include all manner of exculpation, explanation, and excuse. Is a statement denying less than everything a confession; may it go out? If facially exculpatory but contradictory of the trial testimony, may it go out? There simply is too much variation in what might be described as a confession to make prejudice a *per se* result of allowing a statement to go out.

¶ 6 Whenever there is no acquittal, trial strategy will be fogged by the post trial second-guessing of those who were not there; yet every good trial lawyer knows the best decisions are not always those which insist on everything to which an accused might be entitled. Objections may be proper, but what will the effect be on the jury, on the witness, or even on the trial court? Foregoing an objection, no matter how valid, may be the best course of action, and the same can be said for not calling every possible witness or asking every possible question on cross-examination. Despite this, we too often fall into the post trial trap of seeing something undone and laying unwarranted blame at counsel's feet.

¶ 7 In *Commonwealth v. Penrose*, 447 Pa.Super. 478, 669 A.2d 996 (1995), counsel wanted to emphasize a statement, nominally a confession, and did not object to it accompanying the jury. Our Court upheld that as a reasonable strategy. It is just as reasonable a strategy now, and there are many other scenarios where it would be equally sound, but given the majority's result, a trial court could not let counsel make that strategic decision, even though it is designed to abet the defense.

¶ 8 As not every violation of a rule inures to the detriment of the accused, a *per se* rule of reversible error may create a dilemma for counsel. Suppose counsel noted the error in this case, but felt it important for the jury to have the state-

---

**3.** Why is a written confession, the accused's words made tangible, more susceptible to overemphasis in the jury room than finger-prints, photographs, weapons, DNA tests or any other damning evidence?

ment: does counsel alert the court in derogation of the client's best interests, or remain silent and be found ineffective? To impose on counsel a *per se* stamp of ineffectiveness for not insisting on compliance with Rule 1114 tars counsel for an act that may have been brilliant rather than negligent. It can reward appellant with a new trial when his cause may not have been prejudiced at all.

¶ 9 While there was a violation of Rule 1114, reversing the conviction is a *per se* cure which may be inappropriate to the actual disease; further diagnosis is called for. I would remand for a determination of the prejudice prong of the test for determining counsel's effectiveness, and accordingly offer this respectful dissent.