J-A29035-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                             :             PENNSYLVANIA
                                             :

             v.                                       :
                                             :
                                             :

LYNNE THOMPSON                       :
                                           :

             Appellant                 :       No. 516 WDA 2023

Appeal from the Judgment of Sentence Entered April 24, 2023
In the Court of Common Pleas of Allegheny County
Criminal Division at CP-02-CR-0007615-2021

BEFORE: BOWES, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:            **FILED: March 6, 2024**

Lynne Thompson (Appellant) appeals from the judgment of sentence imposed after she pled guilty to deceptive or fraudulent business practices (DFBP).[1] After careful consideration, we vacate and remand for further proceedings.

Appellant pled guilty to DFBP at a hearing on April 24, 2023 (plea hearing). At the plea hearing, the parties stipulated that the factual basis for the plea was detailed in "the affidavit of probable cause…." N.T., 4/24/23, at 12. The affidavit of probable cause provided as follows:

> The first complainant/victim is Charles Jordan…. This case involves a house located at 178 Mardi Gras Drive, Pittsburgh[,] PA [("the house" or "the property"). The house] … is owned by Mr. Jordan. The second complainant/victim[] is James Gamret[,] … who [previously] resid[ed] at [the house]. Both

---

[1] 18 Pa.C.S.A. § 4107(a)(2).

complainants/victims filed police reports with the Plum Police Department. …

Mr. Jordan reported that he was in the process of selling [the] house…. He had advertised the sale on … [several] websites. In November of 2019, Mr. Jordan met with … [Appellant] and she informed him that she works for a company that buys houses. On [December 18, 2019,] a sales agreement was signed by Revive Pittsburgh LLC/Lynne Thompson for the purchase of the house in the amount of $145,000.00. The initial closing date for the sale was tentatively set for [January 14,] 2020. There were many delays that were requested by [Appellant,] and then a closing addendum was signed on [March 26, 20]20. Again, [Appellant] provided various excuses for the delays [of] the final closing date. The closing did not occur on any of the agreed dates.

* * *

In early April of 2020, [Appellant] asked Mr. Jordan to leave the front door open at the house so she could have an inspector examine the house. [Appellant] instructed Mr. Jordan to remain in his vehicle while the inspector was in the house. The [purported] inspector left after only a short period of time in the house. Then[,] a [few] days later[, Appellant] made another request for Mr. Jordan to open the house for an appraiser [to assess the property,] and Mr. Jordan was again instructed to wait in his car.

Later in April, 2020, Mr. Jordan had stopped by the house and a woman was standing in the doorway. The woman[,] who was identified as Tiffany Kraus, informed Mr. Jordan that she and her fiancé[,] James Gamret, were renting the house with the option to buy. Mr. Jordan recognized Ms. Kraus as the person [Appellant previously] referred to as the appraiser. Mr. Jordan discovered that Mr. Gamret and Ms. Kraus had signed a Residential Lease/Purchase Agreement with [Appellant]. Mr. Jordan contacted [Appellant] and she tried to convince Mr. Jordan that she [] owned the house. Mr. Jordan then contacted his attorney.

Mr. Gamret reported that [Appellant] approached him at his work and told him about a house she owned that was available for rent with the option to buy. … Mr. Gamret knows [Appellant,] as she is a frequent customer at his work. [Appellant] told him the

house would be available in March 2020. Mr. Gamret and his fiancé did not want to commit until they had a chance to see the house. [Appellant] told them she would set up a tour with the "maintenance guy[,]" whose name is "Chuck." … In early April [2020], Ms. Kraus met [Appellant] at the house[,] where [Ms. Kraus] was instructed to not talk to the maintenance guy "Chuck" due to Covid-19. …

Mr. Gamret and Ms. Kraus informed [Appellant] they wanted to lease the house with the option to buy. They signed a lease agreement on [April 11,] 2020 and gave [Appellant] $100.00 to hold the house. [Appellant] signed as the Lessor, Revive Pittsburgh Real Estate LLC…. [Appellant] told them that the paperwork on the lease had to be dated [April 30, 2020,] due to Covid-19. In the agreement, the rent was set at $945/month and the house purchase price was $165,000.00. [Appellant] told them she required the first month and last month rents along with a security deposit, totaling $2,835.00[,] before they could move in. Mr. Gamret and Ms. Kraus gave [Appellant] the required $2,835.00…. [Appellant] gave them the keys to the house and informed them they could move in. They moved into the house on [April 23,] 2020.

Approx[imately] one week later[, Appellant] complained that the house was still in her name and needed to have it changed. [Appellant] had Mr. Gamret and Ms. Kraus sign a purchase agreement on [May 9,] 2020. [Appellant] wanted a down payment on the house and they agreed on a $3,000.00 down payment in addition to the $945 May rent payment. On [May 19, 2020, Mr. Gamret and Ms. Kraus] gave [Appellant] $3,000.00 in money orders along with $945 in cash for the May rent. [Appellant] was also paid $945.00 for June 2020 rent. Mr. Gamret and Ms. Kraus had given [Appellant] a total of $7,725.00[.]

In late June[,] 2020, Mr. Gamret and Ms. Kraus had a meeting with [Mr.] Jordan and Mr. Jordan's attorney, Raymond Bitar[, Esquire]. Mr. Gamret and Ms. Kraus believed [Appellant] was the owner [of the house] and they had a signed Lease/Purchase agreement to purchase the house. It was at that time they all realized that [Appellant] had been lying to them. [Appellant] did not own the house. Ms. Kraus was not the house appraiser and Mr. Jordan was not the maintenance man. On July 2[, 2020, Mr. Gamret and Ms. Kraus] received a 30[-]day notice

- 3 -

from Mr. Jordan to vacate the house. They moved out on July 30th[.]

Affidavit of Probable Cause, 4/21/21, at 2-3.

On November 8, 2021, the Commonwealth charged Appellant with DFBP and theft by deception.[2] After numerous defense continuances, the plea hearing occurred on April 24, 2023. Pursuant to a negotiated agreement, Appellant pled guilty to DFBP in exchange for the Commonwealth withdrawing the theft by deception charge. After Appellant completed oral and written plea colloquies, the trial court accepted Appellant's guilty plea as intelligently, voluntarily, and knowingly entered. N.T., 4/24/23, at 16 (trial court stating, "I find you have made a knowing, voluntary and intelligent decision to plead guilty. I find that … there's a factual and legal basis to accept this plea.").

The matter proceeded immediately to sentencing. The trial court sentenced Appellant to three years of probation and ordered her to pay restitution of $7,725. Appellant never sought to withdraw her guilty plea.

Appellant timely filed a *pro se* notice of appeal, and the trial court appointed counsel. Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents a single issue:

Does the sale, offer, or exposure for sale, or delivery of "real estate" qualify as either a "commodity" or "service" for purposes of 18 Pa.C.S. § 4107?

Appellant's Brief at 4.

---

[2] 18 Pa.C.S.A. § 3922(a)(1).

Preliminarily, we address whether Appellant preserved her claim for our review. It is undisputed that Appellant never sought to withdraw her guilty plea before the trial court,[3] which ordinarily results in waiver of any challenge to the validity of a plea. *See*, *e.g.*, *Commonwealth v. Watson*, 835 A.2d 786, 791 (Pa. Super. 2003) (holding defendant waived challenge to validity of guilty plea on appeal, where he never preserved the issue by raising it before the trial court, citing Pa.R.A.P. 302(a) (issues cannot be raised for the first time on appeal)); *see also id.* ("[A] party cannot rectify the failure to preserve an issue by proffering it in response to a Rule 1925(b) order." (citation omitted)).[4] However, **the parties *agree* that** (1) **waiver is inappropriate** under the circumstances, where Appellant's guilty plea was facially invalid (for lacking a factual basis, as we discuss further below); and (2) **this Court should vacate Appellant's judgment of sentence and**

_____

[3] Prior to the plea hearing, Appellant filed a *pro se* "emergency motion for the removal of case from criminal court to civil court" (motion for removal) on April 20, 2024. At the plea hearing, Appellant addressed the motion for removal before entering her plea, stating as follows:

> I filed a motion *pro se*. I'm going to argue that motion because this case is about a contract case. It's … about property. And what I want to do is … to have this case removed from state [criminal] court to civil court because that's where it should be.

N.T., 4/24/23, at 3 (capitalization modified). At the conclusion of the plea hearing, Appellant withdrew her motion for removal. *Id.* at 26.

[4] Appellant raised her instant claim for the first time in her court-ordered Rule 1925(b) concise statement of errors complained of on appeal.

**remand for further proceedings.** *See* Appellant's Brief at 18-19, 26 (arguing although Appellant never sought to withdraw the guilty plea before the trial court, her challenge cannot be waived because the plea was facially invalid and "void *ab initio*," where "the parties entered into a plea agreement as to an offense that did not exist on the facts of record."); Commonwealth Brief at 5, 6 (conceding, "guilty pleas must have a factual basis, and pleas without such a basis are invalid"; acknowledging, "[A]ppellant did not preserve her claim below" pursuant to **Watson**, **supra**; and stating the Commonwealth nevertheless "believes that the interests of justice and judicial economy would be best served by [Appellant's] retrial without first having to go through the PCRA[5] process." (footnote added)).

We are guided by this Court's decision in **Commonwealth v. Byrd**, 598 A.2d 1011 (Pa. Super. 1991), where we declined to find waiver in the interest of justice. There, at the defendant's jury trial for kidnapping and other offenses, the trial court provided written instructions to the jury. **Id.** at 1013. At that time, Pennsylvania law prohibited juries from possessing written instructions during deliberations. **Id.** at 1014 (citing **Commonwealth v. Oleynik**, 568 A.2d 1238, 1241 (Pa. 1990) (superseded by Pa.R.Crim.P. 646)[6]

---

[5] Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546.

[6] Rule 646 provides, in pertinent part, that a "trial judge may permit the members of the jury to have for use during deliberations written copies of the portion of the judge's charge on the elements of the offenses, lesser included
*(Footnote Continued Next Page)*

(holding, "the possible prejudice to a defendant[,] from written instructions to a jury[,] outweighs any benefit such instructions might provide.")). Although the defendant filed post-verdict motions, he did not challenge the **Oleynik** matter therein. **Id.** at 1014.

The defendant in **Byrd** appealed to this Court claiming his convictions could not stand, where the jury possessed written instructions during deliberations in violation of **Oleynik**. **Id.** at 1012. The Commonwealth and trial court asserted the defendant had waived the claim for his failure to raise the **Oleynik** matter in post-verdict motions or otherwise before the trial court. **Id.** at 1012, 1014; **see also** Pa.R.A.P. 302(a). This Court disagreed, holding "the interest of justice compels the consideration of" the defendant's claim, **id.** at 1013, reasoning as follows:

> Since we do not agree that this issue was waived, on the unique facts in this case, we are constrained to find merit in [the defendant's] contention. Moreover, were this specific issue on these precise facts to return to this [C]ourt within a framework of ineffective assistance of counsel, the fact that the claim has merit and that the defendant has been prejudiced has already been decided by our Supreme Court in **Oleynik**. In the interest of judicial economy, therefore, and finding the claim to have merit, we reverse [the] judgment of sentence and remand for a new trial.

**Id.** at 1014 (citation omitted); **see also Commonwealth v. Hackman**, 623 A.2d 350, 351 (Pa. Super. 1993) (citing **Byrd** for the proposition, "we may

---

offenses, and any defense upon which the jury has been instructed." Pa.R.Crim.P. 646(B).

- 7 -

consider a waived claim lest it return to the court in the form of an ineffective assistance of counsel claim.").

Based on the foregoing, considering "the unique facts in this case" (especially the Commonwealth's concession that waiver is inappropriate) and the "interest of judicial economy," we decline to find waiver and proceed to the merits of Appellant's claim. **Byrd**, 598 A.2d at 1014; **see also Hackman**, 623 A.2d at 351.

Appellant claims her conviction for DFBP cannot stand, where the facts to which she pled guilty "were insufficient to support the offense in question." Appellant's Brief at 15. Appellant's claim implicates the sufficiency of the evidence. A challenge to the sufficiency of the evidence "presents a question of law, for which our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Packer**, 168 A.3d 161, 166 (Pa. 2017). In reviewing a sufficiency challenge, the standard of review we apply is

> whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder.

**Commonwealth v. Widger**, 237 A.3d 1151, 1156 (Pa. Super. 2020) (citation omitted).

Appellant claims the facts to which she stipulated are insufficient to establish all elements of DFBP. **See** Appellant's Brief at 15-18. Section 4107(a)(2) provides:

> **(a) *Offense defined*.** — A person commits an offense if, in the course of business, the person:
>
> * * *
>
> (2) sells, offers or exposes for sale, or delivers less than the represented quantity of any **commodity or service**….

*Id.* (emphasis added);[7] ***see also Commonwealth v. Hill***, 140 A.3d 713, 718 (Pa. Super. 2016) ("Proof of [DFBP] requires that a defendant (1) with a wrongful intent to deceive; (2) 'in the course of business;' (3) 'sells, offers or exposes for sale, or delivers less than the represented quantity of any commodity or service.'" (quoting 18 Pa.C.S.A. § 4107(a)(2)). Appellant argues she did not violate section 4107(a)(2), as

> [s]he offered no commodities. She offered no services. The affidavit [of probable cause] makes out that [Appellant] attempted to sell real property that was not hers. That's not a crime under the at-issue statute.

Appellant's Brief at 15. Appellant claims real property is not a "commodity" or "service." ***See id.*** at 15-18.

The Commonwealth "concedes [Appellant's] conviction likely cannot be sustained, as real estate likely is not a 'commodity' or 'service,' as contemplated by the [DFBP] statute." Commonwealth Brief at 5 (citing ***Commonwealth v. Yeomans***, 24 A.3d 1044, 1048 (Pa. Super. 2011) ("It is

---

[7] Neither section 4107 nor the Crimes Code generally define "commodity" or "service." We are mindful that the "construction of a statute raises a question of law. On questions of law, our standard of review is *de novo*, and our scope of review is plenary." ***Commonwealth v. Diego***, 119 A.3d 370, 373 (Pa. Super. 2015) (citations omitted).

clear that before accepting a plea of guilty, the trial court must satisfy itself that there is a factual basis for the plea.") (citation omitted)).

The trial court, in its Pa.R.A.P. 1925(a) opinion, determined the facts to which Appellant stipulated supported her conviction under section 4107(a)(2), where

> [Appellant] was providing residential leasing **services** when she[,] acting on behalf of an alleged real estate company, offered to lease with the option to purchase, the property … to victims Kraus and Gamret[.]  Further, [Appellant] represented herself as a real estate company offering the **service** of purchasing the … [property] from victim Jordan.

Trial Court Opinion, 7/6/23, at 2 (emphasis added).  Upon careful review, we disagree.

The stipulated facts established that Appellant attempted to sell real property that she did not own.  Nothing in the affidavit of probable cause alleges that Appellant was "providing residential leasing services."  Thus, the factual basis of Appellant's plea is not sufficient to establish she offered the victims "services" in violation of the DFBP statute.

Our review further discloses no factual basis for finding Appellant offered the victims a "commodity."  In so holding, our review confirms Appellant's argument that "[n]o authority defines commodity as including real estate." Appellant's Brief at 15; **see also id.** at 15-17 (collecting various Pennsylvania statutes defining "commodity").  Black's Law Dictionary defines "commodity" as follows:

> **commodity.** []  **1.** An article of trade or commerce. • The term embraces *only tangible goods*, such as products or merchandise, as distinguished from services.  **2.** An economic good, esp. a raw material or an agricultural product.

*Commodity*, BLACK'S LAW DICTIONARY (11th ed. 2019) (italics added); ***see also***

***Commonwealth v. Derr***, 293 A.3d 671, 680 (Pa. Super. 2023) (stating when

"there is no statutory definition of" certain terms, we "turn to their plain,

ordinary meaning.").  As real property is distinct from "tangible goods," we

agree it is not a "commodity" for purposes of section 4107(a)(2).  *Commodity*,

BLACK'S LAW DICTIONARY, ***supra***.

Based on the foregoing, we agree with Appellant and the Commonwealth

that the factual basis for Appellant's guilty plea was not sufficient to sustain

her DFBP conviction.  We thus vacate Appellant's judgment of sentence and

remand for further proceedings consistent with this memorandum.

Judgment of sentence vacated.    Case remanded.    Jurisdiction

relinquished.

Judge Kunselman concurs in the result.

Judge Bowes files a dissenting memorandum.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

3/6/2024