**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 83 MAP 2023 |
| | : | |
| Appellee | : | Appeal from the order of the |
| | : | Superior Court at No. 229 MDA |
| | : | 2022 entered on January 23, 2023, |
| v. | : | Affirming the PCRA Order of the |
| | : | Dauphin County Court of Common |
| | : | Pleas at No. CP-22-CR-0002609- |
| LAMARCUS EUGENE DRAYTON, | : | 2016 entered on January 12, 2022. |
| | : | |
| Appellant | : | SUBMITTED: January 1, 2024 |

**OPINION**

**JUSTICE McCAFFERY**                    **DECIDED: April 25, 2024**

In this discretionary appeal, we granted review to consider the question of whether trial counsel's failure to object, when a trial court provides certain written instructions to the jury during deliberations in contravention of Pennsylvania Rule of Criminal Procedure 646,[1] constitutes ineffective assistance of counsel *per se* such that a PCRA petitioner need not establish prejudice in order to obtain relief. We hold that counsel's failure to object to a Rule 646 violation is not one of the limited bases establishing ineffectiveness *per se*. Accordingly, we affirm the decision of the court below.

---

[1] Pennsylvania Rule of Criminal Procedure 646 specifies the materials a jury is permitted to possess during deliberations. Relevant herein, the Rule states that "the jury shall **not** be permitted to have … written jury instructions" with the exception (in the trial court's discretion) of the portion of the charge describing the elements of the offenses, lesser included offenses, and applicable defenses. Pa.R.Crim.P. 646(B)(1), (C)(4) (emphasis added).

In October of 2015, M.B., then 13 years old,[2] confided to a counselor that his uncle, Lamarcus Eugene Drayton (Drayton), had sexually assaulted him on more than one occasion.  Drayton was subsequently arrested and charged with two counts of involuntary deviate sexual intercourse (IDSI), and one count each of unlawful contact with a minor, indecent assault, and corruption of minors.[3]  The case proceeded to a jury trial beginning on May 9, 2018.  Drayton was represented by Jonathan Crisp, Esquire.

The Commonwealth presented three witnesses at trial: (1) B.L., M.B.'s paternal grandmother and legal guardian; (2) Linda Sharretts, the counselor to whom M.B. reported the sexual assault allegations; and (3) M.B., who described in detail the sexual abuse he endured from Drayton.

The trial testimony established that B.L. was granted guardianship of M.B. in November of 2013, after she learned M.B. was being physically abused in his mother's home.  In October of 2014, M.B. began meeting with Sharretts, a licensed professional counselor at Diakon Family Life Services, two to three times a month.  During a session on October 12, 2015, M.B. disclosed that he had been repeatedly sexually abused by Drayton.  As a mandatory reporter, Sharretts reported the allegations to Children and Youth Services that same day.

M.B. testified he had been involved with Children and Youth Services since he was five or six years old.  He explained that he moved around quite a bit, and often missed school to babysit his six younger siblings.  M.B. detailed the sexual acts Drayton committed against him at several different residences.  He stated that the last incident occurred the day before he reported the abuse to Sharretts.

---

[2] M.B. was born in August of 2002.  *See* N.T., 5/9-10/2018, at 61.

[3] 18 Pa.C.S. §§ 3123(a)(7), 6318(a)(1), 3126(a)(8), and 6301(a)(1), respectively.

Drayton did not testify in his own defense. However, he presented two witnesses who claimed that in October of 2017, less than a year before trial, M.B. admitted to them that he fabricated the abuse allegations against Drayton to avoid returning to his mother's home.

Following closing arguments, the trial court charged the jury on the pertinent issues of law. The court stated it would provide a written copy of the "same language that [it] used in the charges to refresh [the jury] on the charges themselves." N.T., 5/9-10/2018, at 223. Later, before the jury retired for the evening, the following exchange occurred on the record:

> THE COURT: … Just for the record, before the jury comes in, they did send a note earlier that I discussed with counsel asking for [an exhibit,] and asking for the copy of the instruction on reasonable doubt, which I did send them.
>
> [Trial Counsel]: You said presumption of innocence as well?
>
> THE COURT: Yes.
>
> [Trial Counsel]: Those are the three that I understood.
>
> THE COURT: Correct.

*Id.* at 228-229.

The next day, the jury returned a verdict of guilty on all charges. The trial court sentenced Drayton to an aggregate term of 10 to 20 years' imprisonment, followed by five years' probation.

Drayton filed a direct appeal, asserting that the verdict was against the weight of the evidence, and that the trial court erred when it excluded an alleged prior inconsistent statement by M.B. The Superior Court affirmed the judgment of sentence, and Drayton did not seek *allocatur* review. *See Commonwealth v. Drayton*, 227 A.3d 436 (Pa. Super. 2020) (unpub. memo.).

On March 24, 2021, represented by Illion Ross Fish, Esquire (Attorney Fish), Drayton filed a petition pursuant to the Post Conviction Relief Act (PCRA),[4] asserting trial counsel was ineffective for failing to object when the court sent written instructions to the jury in violation of Rule 646,[5] and for failing to call three witnesses whom Drayton claimed would have testified Drayton had no opportunity to commit the sexual offenses.[6] The PCRA court conducted a hearing on August 24, 2021.

At the beginning of the hearing, Attorney Fish informed the PCRA court that he did not "need to take any testimony" on the ineffectiveness claim concerning the written jury instructions. N.T., 8/24/2021, at 6-7. Instead, he indicated the court could rely on his exhibits — which included the portion of the transcript where trial counsel failed to object — and his "legal argument[.]" *Id.* at 6. Attorney Fish then called the three witnesses in support of Drayton's second claim before announcing that was "all the live testimony" he intended to present. *Id.* at 31.

The Commonwealth called trial counsel to explain his defense strategy and why he chose not to present the three potential fact witnesses. Attorney Fish cross-examined trial counsel regarding the missing witness issue before briefly questioning him about the jury instructions claim. After trial counsel acknowledged the court provided the jury with written instructions on "reasonable doubt" and, upon counsel's request, the "presumption

---

[4] 42 Pa.C.S. §§ 9541-9546.

[5] Drayton argued trial counsel was ineffective for failing to object (1) when the court "sent back jury instructions which are specifically prohibited" by the Rule, and (2) when the court did not instruct the jury, consistent with subsection (B)(2), that it must give "equal weight" to both the written and oral instructions. PCRA Petition, 3/24/2021, at 8-9. *See also* Pa.R.Crim.P. 646(B)(2)(a)-(b) & Comment.

[6] The witnesses were Drayton's father, mother, and older sister, who each resided at one or more of the residences where the sexual abuse occurred. *See* N.T., 8/24/2021, at 8-9, 19-20, 24, 27-28.

of innocence," Attorney Fish asked counsel: "And you would have done that because you wanted it to be highlighted … that Mr. Drayton has a presumption of innocence?" N.T., 8/24/2021, at 44-45. Trial counsel replied, "Yes." *Id.*

Following the testimony, Attorney Fish argued to the PCRA court that Rule 646 directly prohibits a trial court from sending those written instructions to the jury, and, in this case, it was "impossible to review" the written instructions provided because they were not preserved in the record. N.T., 8/24/2021, at 47-48. The Commonwealth responded that the jury was properly instructed on the law, and Drayton could not demonstrate he was prejudiced. *Id.* at 52.

Five months later, the PCRA court issued an opinion and order dismissing Drayton's petition. On the written jury instructions claim, the court emphasized that Drayton was unable to "identify any specific objectionable written [ ] instructions that were sent to the jury," and, therefore, could not satisfy his burden to demonstrate prejudice. PCRA Court Opinion, 1/12/2022, at 8. The PCRA court also found trial counsel provided a reasonable basis for not calling the three fact witnesses who testified at the hearing, and, moreover, Drayton failed to establish the absence of their testimony prejudiced him. *Id.* at 10.

Drayton appealed both claims to the Superior Court, which affirmed in an unpublished memorandum opinion. *See Commonwealth v. Drayton*, 292 A.3d 1114 (Pa. Super. 2023) (unpub. memo.). Relying upon this Court's decision in *Commonwealth v. Karaffa*, 709 A.2d 887 (Pa. 1998), Drayton argued the trial court committed reversible error when it provided the jury with the written instructions, and trial counsel's failure to object was "inherent[ly] prejudic[ial,]" relieving Drayton of the burden to demonstrate he was prejudiced by counsel's omission. *Drayton*, 292 A.3d at *6 (*citing Karaffa*, 709 A.2d at 888, 890). *See also Commonwealth v. Young*, 767 A.2d 1072, 1075-1076 (Pa. Super.

2001) (applying *Karaffa* when trial court provided jury with written copy of defendant's confession, and rejecting harmless error analysis because court's actions were "inherently prejudicial" and counsel was ineffective for failing to object). The Superior Court, however, rejected Drayton's reliance on *Karaffa* because it was decided prior to the 2009 amendment to Rule 646, which now permits trial courts to provide juries with certain written instructions, specifically those concerning the elements of the offenses charged. *See Drayton*, 292 A.3d at *6. The Superior Court observed that at the time *Karaffa* was decided, former Pennsylvania Rule of Criminal Procedure 1114[7] "did not permit **any written material** to be in the jury's possession when it deliberated aside from 'such exhibits as the trial judge deem[ed] proper,' with any transcripts of trial testimony, a written copy of a confession by the defendant, or a copy of the bill of information being specifically prohibited[.]" *Drayton*, 292 A.3d at *6 (emphasis added).

Rather, the Court turned to its own *en banc* decision in *Commonwealth v. Postie*, 200 A.3d 1015 (Pa. Super. 2018) (*en banc*), which "expressly rejected" a defendant's contention that trial counsel was *per se* ineffective when counsel, absent objection, sanctioned the trial court's decision to send a copy of the defendant's written statement to the jury during deliberations. *Drayton*, 292 A.3d at *6 (*citing Postie*, 200 A.3d at 1030). The *Postie* Court determined counsel provided a reasonable strategic basis for the decision and refused to presume prejudice, noting "our courts have presumed prejudice in only the rarest of circumstances." *Id.*

Applying *Postie* to the facts before it, the Superior Court reasoned that while Drayton's ineffectiveness claim had arguable merit, he failed to establish trial counsel lacked a reasonable basis for his actions, or that he was prejudiced as a result. *Drayton*, 292 A.3d at *7. The Court expressly held "sending written instructions for presumption of

---

[7] Rule 1114 was renumbered Rule 646 effective April 1, 2001.

innocence and reasonable doubt with the jury for its use during deliberations does not rise to the level of ineffective assistance of counsel *per se*." *Id.* In affirming the PCRA court, the Superior Court also rejected Drayton's claim that counsel was ineffective for failing to call three witnesses. *See id.* at *5.

Drayton petitioned this Court for allowance of appeal on both issues raised below. We granted limited review to consider only the written jury instructions claim:

> Did the court err and abuse its discretion in denying [Drayton's] PCRA [petition] given trial counsel's ineffectiveness for failing to object to written jury instructions being sent back with the jury during deliberations by requiring a show of prejudice which would in essence require the jurors to be polled on how [they] viewed the jury instructions?

*Commonwealth v. Drayton*, 303 A.3d 109 (Pa. 2023) (*per curiam*).[8]

Relying upon the plain language of Rule 646 and *Karaffa*, Drayton argues the trial court was not permitted to send written instructions on the concepts of "reasonable doubt" and "presumption of innocence" to the jury during deliberations. *See* Drayton's Brief at 14-16. Although the PCRA court noted Drayton was unable to pinpoint any deficiencies in the trial court's instructions, Drayton emphasizes the court did not retain the written instructions it provided to the jury. Therefore, he contends the only way for him to "prove or disprove harm would be to call sitting jurors to discuss how they used the instructions[,]" a practice which he describes as "obviously not feasible." *Id.* at 15. Relying upon this Court's holding in *Karaffa*, Drayton argues "there is 'inherent prejudice in [the] practice' of sending back jury instructions" and, thus, "a three[-]pronged [ineffectiveness] test need not be contemplated." *Id.* at 16 (*citing Karaffa*, 709 A.2d at 890). Moreover, he insists Rule 646 is a penal statute that must be "strictly construed" and maintains this Court

---

[8] We note with disapproval that Attorney Fish filed a brief in this Court identical to the one he filed before the Superior Court. As such, he inappropriately includes argument concerning the second issue raised below, for which we did not grant *allocatur* review. *See* Drayton's Brief at 7, 11-14.

would have to declare the Rule unconstitutional to condone the trial court's actions in the present case. *Id.* at 16.

The Commonwealth counters that *Karaffa* was "expressly overruled" following the 2009 amendment to Rule 646.[9]  Commonwealth's Brief at 6.  It emphasizes that "the violation of a state procedural statute does not amount to a constitutional violation[,]" and, furthermore, Drayton conceded he could not establish prejudice at the PCRA hearing. *See id.*  Thus, the Commonwealth maintains Drayton is "judicially estopped" from arguing a different position on appeal.  *Id.*

Finally, with regard to the three-prong ineffectiveness test, the Commonwealth maintains trial counsel provided a reasonable basis for his failure to object when the trial court sent written instructions on "reasonable doubt" and "presumption of innocence" to the jury — "he wanted these points highlighted for the jury."  Commonwealth's Brief at 8. Moreover, it emphasizes Drayton never even attempted to establish the prejudice prong; instead, he argued he was not required to do so.  *Id.*  The Commonwealth disputes Drayton's assertion that the only way he could establish prejudice would be to "poll the jury[,]" by noting that Drayton did not present that argument before the PCRA court.  *Id.* at 11.  In any event, the Commonwealth asserts Drayton "cannot establish prejudice due to the overwhelming evidence of his guilt."  *See id.* at 8-10.

When considering a PCRA court's denial of relief, we review legal conclusions *de novo*, but rely upon the lower court's factual findings and credibility determinations when they are supported by the record. *Commonwealth v. Rizor*, 304 A.3d 1034, 1051 (Pa. 2023).  Where a petitioner's claim is premised on the ineffective assistance of counsel, the petitioner must rebut the presumption that counsel provided effective assistance by

---

[9] The Commonwealth also asserts that the Superior Court's *en banc* decision in *Postie* overruled its prior panel decision in *Young* in a similar fashion.  *See* Commonwealth's Brief at 6.

pleading and proving the well-established three-prong test adopted by this Court in *Commonwealth v. Pierce*, 527 A.2d 973 (Pa. 1987), and crafted from the United States Supreme Court's ruling in *Strickland v. Washington*, 466 U.S. 668 (1984): (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for their action or inaction; and (3) the petitioner suffered prejudice as a result. *See Pierce,* 527 A.2d at 975-976. The failure to satisfy any one of the ineffectiveness prongs precludes relief. See *Rizor*, 304 A.3d at 1051.

Nevertheless, the United States Supreme Court recognized in *U.S. v. Cronic*, 466 U.S. 648 (1984) — decided the same day as *Strickland* — there are "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Id.* at 658 (footnote omitted). The Court identified three situations when a presumption of prejudice would be appropriate: (1) when there is a "complete denial of counsel[;]" (2) when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing[;]" or (3) when "the surrounding circumstances made it so unlikely that any lawyer could provide effective assistance[.]" *Id.* at 659, 661. We have applied the doctrine of prejudice *per se* only in "limited circumstances," such as when the defendant suffers from "the actual or constructive denial of counsel[.]" *Commonwealth v. Rosado*, 150 A.3d 425, 429 (Pa. 2016).

The issue before us concerns the continued vitality of this Court's holding in *Karaffa* — that the submission of written instructions to the jury during deliberations is "inherently prejudicial" — in light of the subsequent amendment to Rule 646, which now enables a trial court to provide the jury with certain written instructions, specifically, those detailing the elements of the offenses, lesser included offenses, and applicable defenses. At this juncture, we must first review Rule 646's predecessor and the subsequent case law providing the framework for what materials a jury may consider during deliberations.

The precursor to Rule 646, Pennsylvania Rule of Criminal Procedure 1114, specified: "Upon retiring for deliberations, the jury shall **not** be permitted to have a transcript of any trial testimony, nor a copy of any written confession by the defendant, nor a copy of the information or indictment." Pa.R.Crim.P. 1114 (emphasis added). However, it further provided that "the jury may take with it such exhibits as the trial judge deems proper." *Id.* Notably, Rule 1114 did not expressly prohibit, nor permit, providing a jury with a written copy of the trial court's instructions.

This Court first recognized the potential prejudicial effect of permitting deliberating juries to review parts of the court's instructions in *Commonwealth v. Baker*, 353 A.2d 406 (Pa. 1976). In that case, the defendant argued the trial court erred by providing the jury with a "written set of possible verdicts" to consult during deliberations. *Id.* at 413. Noting that Rule 1114 did not preclude that practice, and, in fact, some jurisdictions found written instructions beneficial for a jury,[10] this Court nevertheless determined "the inherent dangers outweigh the possible benefit to be derived therefrom." *Id.* at 413-414 (explaining "jurors may tend to overemphasize the importance of the matters" in a written charge "and possibly ignore the totality of the oral charge"). Although we ultimately concluded the trial court did not abuse its discretion and the defendant was not entitled to a new trial, the *Baker* Court suggested the "practice should not be followed" in the future. *Id.* at 414. Both then-Justice Roberts and Justice Pomeroy filed dissenting opinions in favor of granting the defendant a new trial. *See id.* at 414-415 (Roberts, J., dissenting) ("The trial judge improperly sent out with the jury, over objections by both the Commonwealth and the defense, written questions with answers. … This unusual procedure prejudiced appellant's right to a fair trial."); *id.* at 417 (Pomeroy, J., dissenting) (concluding that

---

[10] *See Baker*, 353 A.2d at 413 (*citing Copeland v. United States*, 152 F.2d 769, 770 (D.C. Cir. 1945) (providing written instructions to juries "is required in some states and is widely practiced")).

although the court's actions deserved more "commendation than condemnation[,]" proceeding without consent of the Commonwealth or defendant was improper and justified new trial).

Next, in *Commonwealth v. Oleynik*, 568 A.2d 1238 (Pa. 1990), this Court considered a question more pertinent to the one before us — whether the defendant was entitled to a new trial when, over defense counsel's objection, the trial court "sent with the jury written instructions pertaining to legal causation and the definitions of third[-]degree murder and involuntary manslaughter." *Id.* at 1239. Relying upon *Baker*, and other decisions indicating a "continued … preference for oral instructions[,]" the *Oleynik* Court held "the possible prejudice to a defendant from written instructions to a jury outweighs any benefit such instructions might provide." *Id.* at 1240-1241. Notably, while the trial court in that case cautioned the jury regarding the weight to be given the written charges, this Court determined the instruction was "wholly inadequate to cure any possible prejudice." *Id.* at 1241. Further, we rejected the Commonwealth's argument that the trial court simply exercised its discretion under former Rule 1114 — we emphasized Rule 1114 permitted the court to provide only trial **exhibits**, not jury instructions, to the jury during deliberations. *See id.* at 1240 n.2.

*Baker* and *Oleynik* provided the framework for our subsequent decision in *Karaffa*. There, the trial court provided the jury with written instructions on the elements of unlawful restraint and the definition of reasonable doubt, absent any objection by defense counsel. *Karaffa*, 709 A.2d at 888. On direct appeal, the defendant argued both trial court error and the ineffective assistance of counsel for failing to object.[11] Although the Superior Court concluded the trial court erred in providing the jury with the written charges, it

---

[11] *Karaffa* was decided before our seminal decision in *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002), reserving ineffectiveness claims for collateral review.

determined the error was harmless.  *See id.*  We granted *allocatur* review to consider whether the Superior Court erred in applying the harmless error doctrine, and whether trial counsel was ineffective for failing to object to the court's actions.  *Id.*

Writing for a four-Justice majority, Justice Nigro first emphasized the Court's prior holding in *Oleynik* — "the possible prejudice to a defendant from providing written instructions to a jury universally outweighs any benefit such instructions might provide." *Karaffa,* 709 A.2d at 889 (*citing Oleynik*, 568 A.2d at 1241).  Based on that ruling, the Majority observed "it would be logically unsound to conclude beyond a reasonable doubt that there was **not** a reasonable possibility that the instructions received by the jury [in this case] contributed to its verdict."[12]  *Id.* (emphasis added).   Rejecting the Commonwealth's claim that the defendant did not suffer any prejudice, the Majority opined:

> The Commonwealth's argument … misconstrues the fundamental principle of *Oleynik* that the use of written jury instructions is **intrinsically prejudicial** and it is this intrinsic, unfair prejudice that requires granting a new trial. Contrary to both the Commonwealth's assertions and the Superior Court's determination below, then, *Oleynik* discloses what today's holding strives to make clear — **it is reversible error for a trial court to send written instructions to a jury during its deliberations.**

*Id.* at 890 (emphases added).

The *Karaffa* Majority then took one step further.  Rather than apply the three-prong test to determine if counsel was ineffective for failing to object to the trial court's error, and given the "inherent prejudice in this practice," the Majority concluded, with "little

---

[12] Justice Nigro also noted that the Superior Court's harmless error analysis was based on the incorrect premise that the trial court sent **only** the written definition of unlawful restraint to the jury, a charge on which the defendant was acquitted; in fact, the court also provided a written copy of the charge on reasonable doubt.  *See Karaffa*, 709 A.2d at 889.

difficulty[, that] counsel was ineffective for failing to object … and specifically, that [the defendant] was prejudiced by trial counsel's omission." *Karaffa*, 709 A.2d at 890.

Then-Justice Castille authored a dissenting opinion, joined by Justice Newman, concluding that *Oleynik* was "wrongly decided, and that trial courts should have discretion to submit standard written instructions to juries in appropriate circumstances." *Karaffa*, 709 A.2d at 890 (Castille, J., dissenting). He emphasized the United States Supreme Court, as well as the majority of the states, "ha[d] approved the practice of submitting a written jury charge." *Id.* at 892 (*citing Haupt v. United States*, 330 U.S. 631, 643 (1947) (claim that court erred in "allowing the jury to have a typewritten copy of the court's charge" did not "warrant the inference of unfairness or irregularity in the trial")). Justice Castille reflected that "[w]ritten instructions would help keep the jury focused on the law applicable to the case, thereby benefitting all parties." *Id.* He also agreed with the Superior Court's determination that any error in submitting the definition of **reasonable doubt** to the jury was harmless, particularly since it acquitted the defendant of five charges. *Id.*

As explained above, *Karaffa* and its predecessors were decided under former Rule 1114, which did **not** explicitly prohibit the trial court from providing the jury with its written charge; in fact, both *Oleynik* and *Karaffa* emphasized that any reliance on the Rule was unwarranted. *See Oleynik*, 568 A.2d at 1240 n.2; *Karaffa*, 709 A.2d at 889 n.3. After Rule 1114 was renumbered Rule 646 effective April 2001, it **expressly prohibited** the jury from having any written instructions in deliberations. *See Commonwealth v. Strong*, 836 A.2d 884, 887 (Pa. 2003) (*citing* Pa.R.Crim.P. 646(B)(4)).

However, a 2009 amendment to the Rule changed the landscape regarding written jury instructions:[13]

### Rule 646. Material Permitted in Possession of the Jury

(A) Upon retiring, the jury may take with it such exhibits as the trial judge deems proper, except as provided in paragraph (C).

(B) The trial judge may permit the members of the jury to have for use during deliberations written copies of the portion of the judge's charge on the elements of the offenses, lesser included offenses, and any defense upon which the jury has been instructed.

(1) If the judge permits the jury to have written copies of the portion of the judge's charge on the elements of the offenses, lesser included offenses, and any defense upon which the jury has been instructed, the judge shall provide that portion of the charge in its entirety.

(2) The judge shall instruct the jury about the use of the written charge. At a minimum, the judge shall instruct the jurors that

(a) the entire charge, written and oral, shall be given equal weight; and

(b) the jury may submit questions regarding any portion of the charge.

**(C) During deliberations, the jury shall not be permitted to have:**

(1) a transcript of any trial testimony;

(2) a copy of any written or otherwise recorded confession by the defendant;

(3) a copy of the information or indictment; and

**(4) except as provided in paragraph (B), written jury instructions.**

(D) The jurors shall be permitted to have their notes for use during deliberations.

Pa.R.Crim.P. 646 (some emphases added).  The Comment to the Rule clearly states it was amended in response to our decision in *Karaffa*:

---

[13] This version includes a 2012 amendment to the Rule, which inserted the language "or indictment" in subsection 646(C)(3) and omitted part of the Comment, neither of which impacts our analysis.

Th[e 2009] amendment **supersedes the line of cases** from *… Baker…* and *… Oleynik …* through *… Karaffa*, … in which the Court held it was reversible error to submit written jury instructions to the jury **to the extent these cases would preclude** that portion of the charge containing the elements of the offense charged, lesser included offenses, and defenses raised at trial from going to the jury.

Pa.R.Crim.P. 646, Comment (emphases added). Accordingly, under amended Rule 646, a trial court may provide a jury with written instructions pertaining to the elements of the offenses charged; however, written instructions concerning "reasonable doubt" and "presumption of innocence" — those at issue here — are still not explicitly addressed.

Since our decision in *Karaffa*, we have addressed various claims pertaining to potential violations of Rule 646, although none in which the trial court provided the jury with a written copy of its instructions. In *Strong*, *supra*, the trial court, over defense counsel's objection, permitted the jury to review a diagram which was never admitted as an exhibit at trial. *Strong*, 836 A.2d. at 885. While we agreed the court violated Rule 646, we declined to find the error was prejudicial *per se*. Rather, acknowledging that, in prior decisions, this Court concluded some violations were *per se* prejudicial (*Oleynik* and *Karaffa*) and others subject to harmless error, *see Commonwealth v. Terry*, 462 A.2d 676 (Pa. 1983),[14] we opined: "If there is a likelihood the importance of the evidence will be skewed, prejudice may be found; if not, there is no prejudice *per se* and the error is harmless." *Strong*, 836 A.2d at 888. Because the defendant did not object to the use of

---

[14] In *Terry*, this Court employed a harmless error analysis before awarding the defendant a new trial after the trial court permitted the jury to deliberate with the defendant's signed confession, which had been summarized by the officer who took the confession. *See Terry*, 462 A.2d at 677 ("Since [the defendant's] only defense was his subjective mental condition we conclude the availability of a police edited statement emphasizing the criminal act and its conscious planning, but omitting [the defendant's] arguably delusional statements, was prejudicial to him.").

the diagram at trial, and, in fact, relied on it during cross-examination, we concluded any error by the trial court was harmless.[15] *Id.* at 888-889.

In *Commonwealth v. Williams*, 9 A.3d 613 (Pa. 2010), we considered a potential violation of Rule 646 in the context of an ineffectiveness claim. There, the trial court permitted the jury to review an audiotaped recording of a witness's trial testimony. The defendant maintained trial counsel was ineffective for failing to object on the basis that the court violated "the spirit" of Rule 646 because the recording was "the 'functional equivalent' of a trial transcript[,]" which is expressly prohibited.[16] *Id.* at 621-622 (citations omitted). Further, relying on *Oleynik* and *Karaffa*, the defendant insisted the error was "*per se* prejudicial because the jury may have placed undue emphasis on certain aspects of the testimony." *Id.* at 622. In rejecting the claim, this Court first determined that the trial court did not violate Rule 646 because an audiotaped recording is different in substance from a written "transcript." *Id.* at 623. Therefore, we concluded the defendant could not establish the arguable merit prong of the ineffectiveness claim. *Id.* Nevertheless, we opined that even if the claim had merit, the defendant could not demonstrate they were prejudiced.[17] *Id.* The *Williams* Court differentiated *Oleynik* and

---

[15] Justice Nigro authored a dissenting opinion, joined by then-Justices Castille and Saylor, in which he agreed the trial court's error was properly considered under the harmless error doctrine since the admission of the diagram was neither "inherently prejudicial nor explicitly prohibited by Rule 646(B)." *Strong*, 836 A.2d at 889 (Nigro, J., dissenting) (footnote omitted). However, Justice Nigro ultimately concluded the court's error was not harmless. *Id.* at 893.

[16] Trial counsel "objected solely on the basis that the jury might feel pressured to return a verdict that same day." *Williams*, 9 A.3d at 622.

[17] Then-Justice Saylor filed a concurring opinion noting he would not have addressed whether the defendant could have demonstrated prejudice since the underlying claim lacked arguable merit. *Williams*, 9 A.3d at 624 (Saylor, J., concurring) ("[M]y concern lies with the possibility that the Court may be understood as suggesting that permitting a jury to listen to taped testimony during its deliberations is less inherently problematic than allowing it to review trial transcripts.").

*Karaffa* — which dealt "exclusively with written documents" — from the audiotape at issue. *Id.* (expressing concern that jurors might rely solely on written documents and abandon their role as courtroom fact finders).

Considering the above, the question that remains is whether the "inherent prejudice" holding in *Karaffa* is sustainable in light of the 2009 amendments to the Rule. And, as a critical corollary, whether trial counsel's failure to object when the court does submit other written portions of its charge to the jury constitutes ineffective assistance *per se*, relieving the defendant of the burden to demonstrate whether counsel had a reasonable basis for their actions and whether the defendant suffered prejudice. We conclude the 2009 amendment to Rule 646 renders *Karaffa*'s "inherent prejudice" holding untenable — particularly where, as here, the claim is grounded in an allegation of the ineffective assistance of counsel. Further, a defendant challenging trial counsel's failure to object when the court provides to the jury written instructions other than those identified in the Rule must still establish the reasonable basis and prejudice prongs of an ineffectiveness claim to obtain relief.

When *Karaffa* was decided in 1998, a jury was permitted to bring very few materials into deliberations. Former Rule 1114 permitted only trial court **exhibits**, so long as the trial court deemed them "proper." Pa.R.Crim.P. 1114. Indeed, it was not until August of 2005 that jurors were permitted to take notes during trial, and, correspondingly, bring those notes with them into deliberations. *See* Pa.R.Crim.P. 644(A), 646(D).[18] Thereafter, as explained *supra*, the 2009 amendment to Rule 646 expanded the jury's deliberation room materials to include (in the court's discretion) a written copy of the court's charge on the elements of the offenses, lesser included offenses, and relevant defenses. *See* Pa.R.Crim.P. 646(B). Thus, since *Karaffa*, we have consistently expanded the list of

---

[18] *See* Order of June 30, 2005, effective August 1, 2005.

items a jury may consider during deliberations — though, notably still omitting the written charges on "reasonable doubt" and "presumption of innocence" provided by the trial court here.

Based on our evolving view of the impact written instructions may have on a jury's deliberations, the "inherent prejudice" holding in *Karaffa* is no longer justified. That is not to say a trial court may routinely provide the jury with a written copy of its entire charge — such practice is still not permitted by Rule 646(C). However, we no longer conclude that a trial court's violation of the Rule, particularly with respect to providing written jury instructions other than those specifically identified, is "inherently prejudicial."[19]

Here, the trial court arguably violated Rule 646(C) when it provided the jury with a written copy of its instructions on "reasonable doubt" and the "presumption of innocence."[20] However, trial counsel failed to object — and, in fact, **requested** the court

---

[19] We granted allowance of appeal to consider whether trial counsel's failure to object to a court's violation of Rule 646 constitutes *per se* ineffective assistance. Accordingly, we do not address the proper analysis for a purported Rule 646 violation when trial counsel has objected.

[20] Drayton does not suggest that the written instructions provided were permissible under Rule 646(B). However, the concepts of "presumption of innocence" and "reasonable doubt" **are** constitutional standards. Indeed, for many criminal defendants, their **only defense** is that the jury must presume their innocence, and the Commonwealth must prove their guilt beyond a reasonable doubt. *See Commonwealth v. Yale*, 249 A.3d 1001, 1018 (Pa. 2021) ("It is well-established that the defendant has no duty to present evidence and may instead rely on the presumption of innocence and the Commonwealth's burden of proof.") (citation omitted). Rule 646(B) broadly states that a judge may provide the jury with "**any defense** upon which the jury has been instructed." Pa.R.Crim.P. 646(B) (emphasis added). This arguably would include instructions on "reasonable doubt" and "presumption of innocence." Moreover, it would be counter-intuitive for a defendant to assert that a written instruction concerning either reasonable doubt or the presumption of innocence was, in any way, prejudicial, considering these constitutional standards were established for the benefit and protection of defendants. Nevertheless, as this claim was not raised or briefed by the parties, we leave this broad interpretation of the Rule for another day.

provide the written charge. Under these circumstances, we conclude a presumption of prejudice is not appropriate.

As envisioned by the *Cronic* Court, the presumption of prejudice should apply only in very limited circumstances, *i.e.*, when there has been an actual or constructive denial of counsel. *See Cronic*, 466 U.S. at 659-661. The Supreme Court reiterated the narrow applicability of the *Cronic* standard in *Florida v. Nixon*, 543 U.S. 175 (2004), noting that the *Cronic* decision itself "illustrated just how infrequently the 'surrounding circumstances [will] justify a presumption of ineffectiveness.'" *Id.* at 190 (*citing Cronic*, 466 U.S. at 662). Indeed, the *Cronic* Court refused to find presumptive ineffectiveness when counsel, a young real estate lawyer, was appointed less than a month before trial to represent the defendant in a complex mail fraud case, which took over four years to investigate.[21] *See Cronic*, 466 U.S. at 649.

This Court has been reticent to expand the presumption of prejudice beyond those circumstances identified in *Cronic*. In fact, we have employed the *per se* ineffectiveness standard **only** in circumstances in which counsel's actions or omissions resulted in the constructive denial of counsel, either at trial or on appeal. *See, e.g., Commonwealth v. Diaz*, 226 A.3d 995, 1010-1011 (Pa. 2020) (counsel was *per se* ineffective for failing to secure Spanish language interpreter on the first day of trial for defendant who could not understand proceedings; concluding defendant was denied the right to counsel "because of his inability to understand critical portions of his criminal trial," and, thus, was unable to

---

[21] In *Nixon*, the Supreme Court considered whether trial counsel's strategic decision to concede the defendant's commission of murder during the guilt phase of a capital trial, in order to concentrate on the penalty phase, absent the defendant's express consent, constituted *per se* ineffective assistance. *See Nixon*, 543 U.S. at 186-187. In concluding that counsel's strategic decision was subject to the *Strickland* standard, the Court emphasized: "When counsel informs the defendant of the strategy counsel believes to be in the defendant's best interest and the defendant is unresponsive, counsel's strategic choice is not impeded by any blanket rule demanding the defendant's explicit consent." *Id.* at 192.

communicate with counsel during critical proceedings); *Rosado*, 150 A.3d at 434 (counsel was *per se* ineffective for filing appellate brief that abandoned all preserved claims, but raised a challenge to unpreserved issue, thereby waiving all merits review); *Commonwealth v. Halley*, 870 A.2d 795, 801 (Pa. 2005) (counsel's failure to file Pa.R.A.P. 1925(b) statement, resulting in waiver of all claims, constitutes *per se* ineffectiveness); *Commonwealth v. Liebel*, 825 A.2d 630, 635 (Pa. 2003) (counsel's failure to file requested petition for allowance of appeal constitutes *per se* ineffectiveness); *Commonwealth v. Lantzy*, 736 A.2d 564, 572 (Pa. 1999) (counsel's failure to file requested direct appeal is *per se* ineffective assistance of counsel).

In contrast, where counsel's actions or omissions do not rise to the level of constructive denial of counsel, nor "completely foreclose merits review" but "merely 'narrow its ambit[,]'"[22] we have declined to apply the *Cronic per se* ineffectiveness standard. *See, e.g., Commonwealth v. Reaves*, 923 A.2d 1119, 1128-1129 (Pa. 2007) (refusing to find *per se* ineffectiveness when probation revocation counsel failed to preserve sentencing claim for appellate review, but "did not operate to entirely foreclose appellate review of the decision to revoke probation and to recommit [defendant] to a term of imprisonment"); *Commonwealth v. Steele*, 961 A.2d 786, 812 (Pa. 2008) (rejecting *per se* ineffectiveness argument when lead counsel provided brief argument during penalty phase before walking out of courtroom; lead counsel did not "entirely fail to function as [defendant's] advocate" when they presented witnesses in support of mitigation, and co-counsel remained in courtroom); *Commonwealth v. Mallory*, 941 A.2d 686, 698 (Pa. 2008) (holding counsel was not *per se* ineffective for failing to demand rule-based oral jury waiver colloquy; proper focus is on sufficiency of written colloquy and circumstances surrounding defendant's awareness of their rights, including discussions with counsel).

---

[22] *Rosado*, 150 A.3d at 432.

We conclude counsel's failure to object when the trial court, in violation of Rule 646(C)(4), sent written portions of its instructions to the jury during deliberations does not rise to the level of a "constructive denial of counsel" nor does it "completely foreclose merits review." Accordingly, such a claim is not subject to the *Cronic per se* ineffectiveness standard. Rather, in order to obtain relief when counsel fails to object to a violation of Rule 646(C)(4), a PCRA petitioner, such as Drayton, must demonstrate the three-prong test adopted by this Court in *Pierce*. While we have no hesitation in concluding such a claim has arguable merit, it is Drayton's burden to establish that trial counsel had no reasonable basis for his actions, and that he was prejudiced as a result. *See Rizor*, 304 A.3d at 1051.

Upon review, we agree with the determination of both the PCRA court and Superior Court that Drayton's ineffectiveness claim fails. Drayton did not attempt to establish the reasonable basis or prejudice prongs of his ineffectiveness claim either before the PCRA court or on appeal. Moreover, in his brief to this Court, Drayton does not address trial counsel's PCRA hearing testimony that the reason he requested the court provide the jury with those particular written instructions was because he wanted the concepts of "reasonable doubt" and "presumption of innocence" "highlighted" to the jury. *See* N.T., 8/24/2021, at 45. Drayton does not argue, nor provide supporting case law, to suggest this strategy was *per se* unreasonable. For that reason alone, his ineffectiveness claim fails. *See Rizor*, 304 A.3d at 1051 ("If a petitioner fails to satisfy any one of the three elements, [their] claim fails.").

We recognize our limited grant of allowance of appeal also alluded to Drayton's concern regarding how a petitioner can prove prejudice when written portions of the charge are made available to the jury during deliberations. In his brief, Drayton insists "[t]he only way to prove or disprove harm would be to call sitting jurors to discuss how

they used the instructions." Drayton's Brief at 15. However, Drayton did not present this argument below. Rather, at the PCRA hearing, Attorney Fish asserted the court's actions constituted *per se* reversible error, and that it was impossible to review the written instructions provided to the jury because they were not preserved in the trial record. *See* N.T., 8/24/2021, at 47-48. The closest counsel came to the argument presented on appeal was his statement that even if a favorable instruction was provided to the jury, "we could only guess what happened back there." *Id.* Thus, Drayton's alarm concerning the post-verdict polling of juries is not preserved for our review. Rather, his claim below — and before this Court — was that proof of prejudice is **not** required, and that trial counsel's failure to object was, accordingly, *per se* ineffective assistance.

Lastly, we summarily reject Drayton's claims that (1) Rule 646 is a penal statute that must be strictly construed; and (2) we would have to declare Rule 646 unconstitutional to condone the trial court's actions. *See* Drayton's Brief at 16. Pennsylvania Rule of Criminal Procedure 103 defines "Penal Laws" as "all statutes and embodiments of the common law which establish, create, or define crimes or offenses, including any ordinances which may provide for imprisonment upon conviction or upon failure to pay a fine or penalty." Pa.R.Crim.P. 103. Clearly, Rule 646 is not a penal law. Moreover, Drayton provides no support for his contention that a violation of a rule of criminal procedure — particularly one that does not implicate a defendant's constitutional rights — is of constitutional magnitude.

Thus, we hold that trial counsel's failure to object, when the trial court provides the jury with written instructions which are not specifically identified in Rule 646, does not constitute *per se* ineffective assistance of counsel, and a PCRA petitioner alleging such ineffectiveness must establish that counsel had no reasonable basis for their actions, and

that petitioner was prejudiced as a result.  Because Drayton failed to establish either of these ineffectiveness prongs, no relief is due.

Order affirmed.

Chief Justice Todd and Justices Donohue, Dougherty, Wecht, Mundy, and Brobson join the opinion.